# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Valent Bio Sciences Corp. v. Kim-C1, LLC*, 2011 IL App (1st) 102073**

| | |
|---|---|
| Appellate Court Caption | VALENT BIOSCIENCES CORPORATION, Plaintiff-Appellant, v. KIM-C1, LLC, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1–10–2073 |
| Filed | June 1, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly dismissed plaintiff's amended complaint seeking to vacate an arbitration award issued following the parties' arbitration in California under the Illinois Uniform Arbitration Act of a dispute arising from their license agreement regarding plaintiff's use of and right to market a plant growth regulator that is applied to crops, since the parties did not expressly agree to arbitrate in Illinois, and absent such an agreement, an Illinois court was not a proper tribunal to adjudicate the dispute. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10–CH–11794; the Hon. Richard J. Billik, Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Schopf & Weiss LLP, of Chicago (Arthur J. Howe and Joseph J. Siprut, of counsel), for appellant.<br><br>Neal, Gerber & Eisenberg LLP, of Chicago (Tonya G. Newman, Meredith D. Schacht, and Andrew G. May, of counsel), for appellee. |

JUSTICE STEELE delivered the judgment of the court, with opinion. Justices Neville and Murphy concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiff, Valent BioSciences Corporation (VBS), appeals an order entered by the circuit court granting the motion filed by defendant Kim-C1, LLC (KIM), pursuant to section 2—619 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—619(a)(1) (West 2008)) dismissing VBS's amended complaint. The circuit court concluded it lacked subject matter jurisdiction over VBS's action seeking to vacate an award issued following the parties' arbitration in California under the Illinois Uniform Arbitration Act (Act) (710 ILCS 5/1 *et seq.* (West 2008)).

¶ 2        On appeal, VBS contends: (1) justiciability was the actual issue before the circuit court, which possessed subject matter jurisdiction over the action; (2) KIM waived any objection to subject matter jurisdiction in the parties' agreement and in its answer to the amended complaint; and (3) the circuit court erred in dismissing the declaratory judgment count. For the reasons set forth herein, we affirm the circuit court's judgment dismissing VBS's amended complaint in its entirety.

¶ 3                                   BACKGROUND

¶ 4        VBS is an agricultural products company and an Illinois corporation with its principal place of business in Illinois. KIM is a California limited liability company and has registered offices in California. On July 9, 1999, VBS (by its predecessor in interest, Abbott Laboratories)[1] entered into an agreement, entitled "Revised Commercial License, Development and Supply Agreement" (License Agreement). The License Agreement involved VBS's use of and right to market a plant growth regulator commonly known as CPPU, which is applied to crops, including certain fruit, to yield a higher crop for consumer use.

¶ 5        Section 21.3 of the License Agreement provided:

"Governing Law. This Agreement shall be construed, interpreted and governed in accordance with the laws of the United States of America and the State of Illinois, except for choice of law rules. *Subject to the terms of Section 21.4*, the Parties consent to the jurisdiction of the competent courts of the State of Illinois which shall have exclusive jurisdiction over all disputes that may arise under or in connection with this Agreement." (Emphasis added.)

---

[1] Abbott Laboratories was neither a party in the underlying action nor a party to this appeal.

¶ 6    Section 21.4 of the License Agreement,[2] entitled "Dispute Resolution," outlined the procedures for the parties to resolve any disputes arising under the contract. The provision provided:

"Any dispute or claim arising out of or in connection with this Agreement shall be resolved as follows: (i) for a period of thirty (30) days after a dispute arises the respective appropriate officer of the Parties shall negotiate in good faith in an effort to resolve the dispute, and (ii) if the dispute has not been resolved at the close of such thirty (30) day[ ] period the matter shall be submitted by the Parties to arbitration in accordance with the rules of the CPR Institute for Dispute Resolution ('CPR') as identified in Exhibit 5.0."

¶ 7    Additionally, the License Agreement provided "[t]he Parties hereby agree to be bound by and fully perform the terms *** contained in the Exhibits, attached hereto and made part hereof, as if the same were fully set forth in this Agreement."

¶ 8    Exhibit 5.0 provided in pertinent part:

"The [alternative dispute resolution] proceeding shall take place at a location agreed upon by the parties. If the parties cannot agree, the neutral [arbitrator] shall designate a location other than the principle [*sic*] place of business of either party or any of their subsidiaries or affiliates."

The License Agreement did not identify a specific location where the dispute resolution proceedings would occur.

¶ 9    In 2007, a dispute under the License Agreement arose between VBS and KIM. Pursuant to the alternative dispute resolution clause in the License Agreement, the parties submitted the dispute to arbitration. The arbitration was held in California and resulted in a final arbitration award entered on March 28, 2008. Subsequent to the 2008 award, the parties had another dispute regarding the License Agreement and certain provisions of the 2008 award, which led to arbitration. The second arbitration was also held in California. An interim arbitration award was issued on January 29, 2010.

¶ 10    On March 22, 2010, VBS filed a two-count complaint in the circuit court of Cook County in Chicago, Illinois. Count I sought to vacate the interim arbitration award pursuant to section 12 of the Act (710 ILCS 5/12 (West 2008)). Specifically, VBS challenged four of the rulings (rulings 2, 3, 4 and 5) issued against VBS as exceeding the arbitrator's powers. VBS also asserted the parties consented to Illinois courts having exclusive jurisdiction over any disputes under the License Agreement. Count II requested a declaratory judgment regarding the parties' controversy about whether Illinois courts possessed exclusive jurisdiction to enforce or vacate the arbitration award.

¶ 11    On March 31, 2010, KIM filed an action in a California federal district court seeking to confirm the final 2010 arbitration award, which was issued on March 30, 2010. On March 31, 2010, VBS filed a motion for leave to file an "Amended Complaint to Vacate Arbitration Award and for Other Equitable Relief" *instanter*, which the circuit court granted in an order

---

[2]The License Agreement contains two provisions labeled 21.4. For purposes of this opinion, we will retain the numbering for this clause with the stated title.

entered on April 8, 2010. The amended complaint contained the same two counts. On the same day, the circuit court entered and continued VBS's additional motion to vacate the arbitration award filed separately on March 31, 2010.

¶ 12    On April 27, 2010, KIM filed an answer to the amended complaint. While denying the License Agreement conferred exclusive jurisdiction to Illinois, KIM admitted the circuit court possessed subject matter jurisdiction. Additionally, KIM requested the circuit court to confirm the 2010 arbitration award in its prayer for relief. However, in KIM's written memorandum in opposition to VBS's motion to vacate filed on May 24, 2010, KIM noted that it was not waiving its objection to Illinois courts lacking jurisdiction under the Act. On June 14, 2010, the circuit court scheduled a hearing on VBS's motion to vacate the award for September 14, 2010.

¶ 13    On May 19, 2010, KIM filed a motion to dismiss VBS's amended complaint[3] pursuant to section 2–619(a)(1) of the Code (735 ILCS 5/2–619(a)(1) (West 2008)) asserting the License Agreement's "silence" to the location of the arbitration failed to confer subject matter jurisdiction to the Illinois courts under the Act. VBS filed a response in opposition to KIM's motion claiming that certain provisions in the License Agreement provided for Illinois to have exclusive jurisdiction over any disputes, including whether to vacate the arbitration award. VBS also contended KIM waived its objection to subject matter jurisdiction under section 21.3 of the License Agreement and by admission in its answer and prayer for relief.

¶ 14    After briefing and a hearing, the circuit court entered a written ruling on June 24, 2010, granting KIM's motion to dismiss VBS's amended complaint for lack of subject matter jurisdiction. On July 19, 2010, VBS filed a timely notice of appeal with this court.

¶ 15                                         DISCUSSION

¶ 16    On appeal, VBS contends the circuit court erred in granting KIM's motion to dismiss for lack of subject matter jurisdiction for several reasons. First, the amended complaint presented a justiciable claim, which was confused with the issue of subject matter jurisdiction, under the Act (710 ILCS 5/1 *et seq.* (West 2008)) and enabled the circuit court to hear the matter.

---

[3]According to VBS's opposition to KIM's motion before the trial court, which is in the record before us, the California federal district court postponed the proceedings on KIM's petition to confirm the award pending the outcome of the circuit court's ruling on VBS's motion to vacate.

During the pendency of this appeal, KIM filed a motion to dismiss VBS's appeal based on the ruling entered by the United States District Court for the Eastern District of California on November 22, 2010. The district court denied VBS's motion to vacate the award, concluded a federal arbitration statute governed the parties' claims, and confirmed the 2010 arbitration award in KIM's favor. KIM attached certified copies of the judgment to its motion. On January 12, 2011, this court denied KIM's motion to dismiss VBS's instant appeal and its alternative motion to stay the appeal pending VBS's appeal of the California district court's ruling. After granting VBS leave to file a response in opposition to KIM's motion to dismiss on January 12, 2011, and receipt of KIM's motion for a ruling on its then-pending motion filed on January 7, 2011, the court entered another order on January 20, 2011, denying KIM's motion.

-4-

Second, KIM waived any objection to subject matter jurisdiction by the parties' written agreement and in its answer to the amended complaint filed prior to its motion under section 2–619 of the Code. Third, the circuit court erred in dismissing the declaratory judgment count, because a controversy existed about whether Illinois had exclusive jurisdiction to adjudicate disputes about the arbitration award. We address each of VBS's contentions in turn.

¶ 17                                    Standards of Review

¶ 18        When a party files a motion to dismiss under section 2–619 of the Code, the motion admits the legal sufficiency of the complaint, but asserts certain defenses and defects outside of the pleading defeat the plaintiff's claim. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006). A motion to dismiss under section 2–619 of the Code affords litigants a means to dispose of issues of law and easily proved issues of fact early in litigation. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). We review dismissals granted pursuant to section 2–619 of the Code *de novo*. *Solaia Technology*, 221 Ill. 2d at 579.

¶ 19        Additionally, this appeal involves the interpretation of the Act. Interpretation of a statute is a question of law, which is reviewed *de novo*. *People v. Lewis*, 223 Ill. 2d 393, 402 (2006). The primary objective of statutory construction is to ascertain and give effect to the legislative intent. *People ex rel. Birkett v. Jorgensen*, 216 Ill. 2d 358, 363 (2005). We effect legislative intent by viewing and "not depart[ing] from the statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express." *People v. Ellis*, 199 Ill. 2d 28, 39 (2002); see also *People ex rel. Madigan v. Kinzer*, 232 Ill. 2d 179, 184-85 (2009) (same). The court should not construe a statute to render any part inoperative, superfluous or insignificant (*Ellis*, 199 Ill. 2d at 39), as we presume the legislature does not intend an absurd, inconvenient or unjust result (*Hall v. Henn*, 208 Ill. 2d 325, 330 (2003)). We conduct *de novo* review in considering the issue of whether jurisdiction was present. *In re Luis R.*, 239 Ill. 2d 295, 299 (2010).

¶ 20                                Subject Matter Jurisdiction

¶ 21        First, VBS contends the circuit court confused the issues of justiciability and subject matter jurisdiction. We perceive the two concepts as inextricably linked and tied together. VBS primarily relies on the Illinois Supreme Court's decision in *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325 (2002), to support its proposition that the circuit court could adjudicate its amended complaint. In *Belleville*, our supreme court explained that subject matter jurisdiction "refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville*, 199 Ill. 2d at 334. The court further explained that our state constitution entirely confers subject matter jurisdiction to circuit courts, with the exception of administrative review actions, which is conferred by statute. *Id.*; Ill. Const. 1970, art. VI, § 9. Furthermore, the court stated the constitutional provision provides for jurisdiction to extend to all justiciable matters. *Belleville*, 199 Ill. 2d at 334. "Thus, in order to invoke the subject matter jurisdiction of the circuit court, a plaintiff's case, as framed by the complaint or petition, must present

a justiciable matter." *Id*. (and cases cited therein). "Generally, a 'justiciable matter' is a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville*, 199 Ill. 2d at 335. Based upon these principles, the supreme court rejected a statute's (Motor Vehicle Franchise Act (815 ILCS 710/1 *et seq.* (West 2000))) limitation period as a jurisdictional prerequisite to bringing a suit given the jurisdiction conferred to Illinois courts by the current Illinois Constitution. *Belleville*, 199 Ill. 2d at 342.

¶ 22 The Illinois Supreme Court's decision in *Chicago Southshore & South Bend R.R. v. Northern Indiana Commuter Transportation District*, 184 Ill. 2d 151 (1998), is instructive and often cited when discussing jurisdiction under the Act. The supreme court heard the matter on a certificate of importance issued by the appellate court (see Ill. S. Ct. R. 316 (eff. Feb. 1, 1994)). *Southshore*, 184 Ill. 2d at 154. In reversing the appellate court, our supreme court expressly held that "under the plain language of the statute, the parties' written agreement must provide for arbitration in Illinois in order for Illinois courts to exercise jurisdiction to confirm an arbitration award." *Southshore*, 184 Ill. 2d at 155-56. The court reached its conclusion despite the parties' decision to conduct the arbitration in Illinois for convenience where the parties' written agreement provided for arbitration in Indiana. *Southshore*, 184 Ill. 2d at 158. While defendant (losing party at arbitration) commenced proceedings in Indiana, plaintiff (prevailing party) subsequently filed an action in Illinois to confirm the award under the Act. *Southshore*, 184 Ill. 2d at 153. During the pendency of the appeal, the Indiana Supreme Court reversed its trial court's ruling that jurisdiction was proper only in the state (Illinois) where arbitration occurred. *Southshore*, 184 Ill. 2d at 154-55, 158.

¶ 23 In determining Illinois courts lacked jurisdiction under the Act, the *Southshore* court discussed *State ex rel. Tri-City Construction Co. v. Marsh*, 668 S.W.2d 148 (Mo. Ct. App. 1984). In *Tri-City Construction*, the court held that Missouri courts possessed jurisdiction to confirm an arbitration award under the Act " 'whenever the agreement either provides for arbitration to take place within [Missouri] *or*, *absent specific agreement*, when arbitration is undertaken with the consent of the parties within [Missouri].' (Emphasis added.)" *Southshore*, 184 Ill. 2d at 156-57 (quoting *Tri-City Construction*, 668 S.W.2d at 151). Indeed, the *Southshore* court concurred with the Indiana Supreme Court's observation that the *Tri-City Construction* case " 'deal[t] with construction of the [Uniform Arbitration] Act to fill a necessary void-failure to specify any jurisdiction at all.' " *Southshore*, 184 Ill. 2d at 157 (quoting *Northern Indiana Commuter Transportation District v. Chicago Southshore & South Bend R.R.*, 685 N.E.2d 680, 695 n.18 (Ind. 1997)).

¶ 24 VBS also cites *In re Luis R.*, 239 Ill. 2d 295 (2010), to support its argument that dismissal was improper.[4] In that case, the supreme court reversed the trial court's dismissal of a petition filed in juvenile proceedings based upon defendant's motion asserting the court was

---

[4]Additionally, VBS cites *People v. Glowacki*, 404 Ill. App. 3d 169, 172 & n.1 (2010), in which the Second District relied upon *Belleville* in considering a jurisdictional question regarding a section 2–1401 petition. We are not bound by the opinions of sister appellate courts. *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008).

" 'without jurisdiction over [defendant's] person,' " because of his age. *Luis R.*, 239 Ill. 2d at 297. The court referenced the circuit court's failure to rule on the State's separate motion requesting consideration of the petition under another statutory provision. *Id.* at 297-98. The court cited *Belleville* in discussing the principles of subject matter jurisdiction and justiciability. *Luis R.*, 239 Ill. 2d at 301-04. The court indicated that subject matter jurisdiction does not depend on the legal sufficiency of pleadings, but whether the alleged claim falls within the general class of cases over which the circuit court has the inherent power to hear and decide. *Luis R.*, 239 Ill. 2d at 301. Nonetheless, the court conceded the petition suffered a potentially fatal pleading defect. *Luis R.*, 239 Ill. 2d at 303.

¶ 25    However, we find the supreme court's recent decision does not necessarily dictate the outcome VBS seeks. Contrary to the trial court in *Luis R.*, the circuit court here did not summarily dismiss the action. The court's 13-page ruling addressed the jurisdictional question by reviewing the Licensing Agreement, the Act and applicable cases before concluding Illinois was not the proper tribunal to hear the dispute about the award.

¶ 26    Even after *Southshore* and *Belleville*, various Illinois courts have consistently construed section 16 of the Act (710 ILCS 5/16 (West 2008)) as conferring jurisdiction on Illinois courts where the parties' written agreement designates arbitration occur in Illinois. For example, in *DHR International, Inc. v. Winston & Strawn*, 347 Ill. App. 3d 642, 649 (2004), which both parties cite for different reasons, our court recognized that *Belleville* and *Southshore* demonstrated that the Illinois Supreme Court considered the Act as a justiciable matter over which circuit courts have original jurisdiction under the Illinois Constitution of 1970. While the court deemed the party challenging the court's jurisdiction had waived its objection by failing to raise the issue in the lower court proceedings, the court stated that "[w]here the parties have expressly agreed to arbitrate in another state, Illinois courts lack *subject matter jurisdiction* over judicial proceedings pertaining to the award, even where a party has acquiesced in holding the arbitration in Illinois." (Emphasis added.) *DHR International*, 347 Ill. App. 3d at 648 (citing *Southshore*, 184 Ill. 2d at 152). We find it significant that our supreme court has not overruled *Southshore*, which was decided four years prior to *Belleville*. See *Belleville*, 199 Ill. 2d at 339-40 (listing cases improperly finding a statutory provision as a jurisdictional prerequisite without questioning outcome).

¶ 27    In another case cited by the parties for different reasons, this court again found that " 'under the plain language of the statute [(710 ILCS 5/16 (West 2008))], the parties' written agreement must provide for arbitration in Illinois in order for Illinois courts to exercise *jurisdiction* to confirm an arbitration award.' " (Emphasis added.) *Costello v. Liberty Mutual Fire Insurance Co.*, 376 Ill. App. 3d 235, 239 (2007) (quoting *Southshore*, 184 Ill. 2d at 155-56); see also *Universal Underwriters Insurance Co. v. Judge & James, Ltd.*, 372 Ill. App. 3d 372, 385 (2007) (parties' agreement providing for arbitration in Illinois confers jurisdiction on any circuit court in state to enforce agreement under section 16 of the Act). This court's conclusion came after discussion about the Act adopted by Illinois as creating a "justiciable matter" over which a circuit court has original jurisdiction under the Illinois Constitution of 1970. *Costello*, 376 Ill. App. 3d at 239; but see *CPM Productions, Inc. v. Mobb Deep, Inc.*, 318 Ill. App. 3d 369, 378 (2000) (interpreting section 16 of the Act as a prerequisite to court's jurisdiction to confirm arbitration award and discussing cases from other states).

¶ 28 Our research revealed no other Illinois case construing section 16 of the Act (710 ILCS 5/16 (West 2008)) differently and specifically where the parties' written agreement is silent about where arbitration will occur and arbitration occurs outside of Illinois. Accordingly, we also consider conclusions reached in other state courts confronted with a similar silence in the parties' agreement. See *Owens v. Department of Human Rights*, 356 Ill. App. 3d 46, 54 (2005) (courts may look to other jurisdictions for guidance absent Illinois authority on point); *Artrip v. Samons Construction, Inc.*, 54 S.W.3d 169, 172 (Ky. Ct. App. 2001) (Kentucky court lacked jurisdiction over arbitration held in Ohio where parties' agreement failed to designate Kentucky as the site); *Tri-City Construction*, 668 S.W.2d at 151 (Missouri courts could hear matter where parties consented to arbitration in that state absent written agreement specifying another location).

¶ 29 We simply cannot ignore the Act's plain language. VBS's interpretation would open the floodgates of litigation in Illinois and contradict the Act's goal for uniformity among states enacting it. 720 ILCS 5/20 (West 2008). While the circuit court here may have misinterpreted the relevant case law concerning the jurisdictional question, our reading of the cases suggests any such confusion is justified. Hence, we conclude the circuit court was vested with subject matter jurisdiction over the justiciable matter presented by VBS's amended complaint invoking the Act. However, our discussion does not end here.

¶ 30 The key issue before us is ascertaining the parties' intent concerning arbitration. See *Carr v. Gateway, Inc.*, 241 Ill. 2d 15, 20 (2011) (determining provision in the Federal Arbitration Act (9 U.S.C. § 5 (2006)) did not negate the parties' agreement for an exclusive, but now defunct, arbitral forum). The agreement to arbitrate is a contractual issue and interpretation of contract is a question of law reviewed *de novo*. *Carr*, 241 Ill. 2d at 20; *Doornbos Heating & Air Conditioning, Inc. v. Schlenker*, 403 Ill. App. 3d 468, 488 (2010) (in construing written contract, court's primary objective is ascertaining and giving effect to the parties' intent as reflected in the agreement). When viewing the parties' agreement here, it is undisputed the parties neither expressly agreed to conduct arbitrations in Illinois nor formally modified their agreement identifying Illinois as the place for arbitration. Indeed, the parties agreed, in writing, to hold the arbitration wherever the neutral arbitrator selected if the parties could not agree on a location. More importantly, the parties agreed, in writing, for the arbitrator to select any place other than the parties' principal place of business. VBS's principal place of business is in Illinois. Thus, the parties agreed to arbitrate in any state and not in Illinois. Other than VBS's bald assertion, nothing in the record demonstrates that VBS filed a pleading opposing the arbitration be held in California. Rather, the assertion demonstrates a disagreement between the parties, thereby triggering the bargained-for-clause in exhibit 5.0 for the arbitrator to select the site for arbitration.

¶ 31 VBS, apparently realizing its agreement would be pivotal, asserts the faulty premise that the clause in the Licensing Agreement dictating Illinois law as governing disputes should be read as constituting an express agreement to conduct arbitrations in Illinois. We disagree with VBS's interpretation as it contradicts the plain wording of the parties' agreement. Read in context, this clause suggests, at best, Illinois was agreed as the governing authority for choice of law determinations, which again concedes the parties would adjudicate the award in another jurisdiction and apply Illinois law.

¶ 32 Moreover, VBS argues section 12 (and not section 16) of the Act, enumerating bases for vacating an award, dictates Illinois as the proper tribunal. Again, we disagree with VBS's interpretation. We find it interesting VBS only challenged four of the rulings issued in the California arbitration, while accepting the single ruling in its favor. If an Illinois court cannot confirm an award based upon the parties' agreement under the Act, it follows that an Illinois court cannot vacate an award in the same action under the same agreement under the Act.

¶ 33 Finally, KIM's brief argues that VBS's attack on the Act's constitutionality is unfounded. In its reply brief, VBS maintains that it is not challenging the statute's constitutionality. Accordingly, we will not address the arguments raised by KIM. Notably, we uphold a statute's constitutionality where possible. *People v. Alcozer*, 241 Ill. 2d 248, 259 (2011); *People v. Aguilar*, 408 Ill. App. 3d 136, 142 (2011).

¶ 34 This court can affirm the trial court on any basis found in the record on appeal, regardless if the trial court relied upon the basis or if the trial court's reasoning is incorrect. *Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 357 (2006); *Alpha School Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 734-35 (2009). Even if the circuit court possessed subject matter jurisdiction, the court could nonetheless decline exercising jurisdiction. Hence, we affirm the circuit court's ultimate finding that Illinois was not the proper tribunal to adjudicate the disputes regarding the arbitration award, not on the basis of lack of subject matter jurisdiction, but because the parties agreed to conduct the arbitration in California with no other specific location expressly agreed to in the governing written agreement. See 735 ILCS 5/2–619(a)(9) (West 2008) (involuntary dismissal based upon other affirmative matter defeating plaintiff's claim).

¶ 35                                    KIM's Alleged Waiver

¶ 36 Next, VBS argues that even if the court lacked subject matter jurisdiction, KIM waived its objection by the parties' agreement and in its answer. We disagree with VBS's contentions. First, VBS claims section 21.3 of the aforesaid agreement, which states the agreement would be construed, interpreted and governed according to Illinois law, waived any objections KIM had[5]. VBS's conclusion that the language confers exclusive jurisdiction is flawed, because VBS ignores other relevant language in the section. In particular, the section also states the agreement shall be interpreted according to the laws of the United States of America.

¶ 37 More importantly, the provision clearly and unambiguously states that consent to jurisdiction in Illinois courts is subject to the terms stated in section 21.4, which refers to the dispute resolution procedures and exhibit 5.0 (appended to the Licensing Agreement). Exhibit 5.0, which is incorporated into the Licensing Agreement by section 21.9 of the same, states arbitration would occur at a location agreed upon by the parties. If the parties could not agree, the arbitration would occur at a location (not the parties' principal place of business or that of any subsidiaries or affiliates) decided by the neutral arbitrator. Moreover, the

---

[5]We reject KIM's argument, asserted in support of its motion to dismiss before the circuit court and on appeal before us, that the term in the contractual provision refers to personal jurisdiction.

exhibit provides that the arbitrator's binding, nonreviewable and nonappealable rulings "may be entered as a final judgment in any court having jurisdiction." It is undisputed the parties' agreement failed to specify a location for arbitration to occur, unlike the parties in *Southshore* and *Costello*. By agreeing to conduct arbitration proceedings where the arbitrator selected, but not a party's principal place of business, VBS and KIM consequently agreed to arbitrate anywhere but Illinois.

¶ 38    On its face, the agreement to have the rulings entered as judgment "in any court having jurisdiction" does not indicate exclusive jurisdiction in Illinois for that purpose. If that were the desired outcome, these sophisticated parties surely would have expressly stated such. Indeed, KIM's answer denied VBS's conclusion the excerpted language in section 21.3 of the Licensing Agreement vested Illinois with exclusive jurisdiction to enforce or vacate the arbitration award.

¶ 39    Second, KIM did not waive its objections in its answer. A party cannot waive subject matter jurisdiction. *Belleville*, 199 Ill. 2d at 333; *Costello*, 376 Ill. App. 3d at 238. Section 2–619 of the Code provides:
> "Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the following grounds. If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit:
>
>     (1) That the court does not have jurisdiction of the subject matter of the action, provided the defect cannot be removed by a transfer of the case to a court having jurisdiction.
>
> * * *
>
>     (d) the raising of any of the foregoing matters by motion under this Section does not preclude the raising of them subsequently by answer unless the court has disposed of the motion on its merits; and a failure to raise any of them by motion does not preclude raising them by answer." 735 ILCS 5/2–619(a)(1), (d) (West 2008).

¶ 40    The Code makes it discretionary, not mandatory, to file a motion initially to raise any defenses enumerated in section 2–619(a) of the Code. See 735 ILCS 5/2–619(a) (West 2008). Thus, KIM's motion filed after its answer was not untimely. See also *Thompson v. Heydemann*, 231 Ill. App. 3d 578, 581 (1992). Additionally, VBS was not prejudiced by the subsequent motion raising issues about jurisdiction, particularly since KIM maintained in its answer that Illinois was not vested with exclusive jurisdiction to hear the matter as VBS contended. KIM's answer also asserted venue was appropriate in Fresno, California, where the federal action was pending.

¶ 41    VBS's reliance upon our decisions in *DHR International* and *Costello* to support its conclusion that KIM waived its objections is misplaced as those cases are easily distinguishable from the instant facts. Contrary to the objecting parties in those cases, KIM filed a motion in the trial court challenging adjudication in Illinois under section 16 of the Act based on the parties' Licensing Agreement. See *Costello*, 376 Ill. App. 3d at 237-38 (defendant objected under section 16 of the Act for first time at appeal after filing motions contesting vexatious delay claim and for jury trial of insurance policy claim in trial court); *DHR International*, 347 Ill. App. 3d at 649 (defendant failed to object based upon section 16

in trial court proceedings seeking to disqualify counsel from representing party at arbitration).

¶ 42 Finally, VBS asserts KIM's prayer for relief, in which it also requested the circuit court to confirm the award, constituted waiver as accepting Illinois's jurisdiction to grant the requested relief. We are unpersuaded by VBS's argument, with no citation to authority, that section 12 of the Act (outlining grounds for vacating award) should be interpreted differently than section 16 under the Act (basis for confirming award).

¶ 43                                                Declaratory Judgment Count

¶ 44 Lastly, VBS contends the circuit court erred in dismissing count II of its amended complaint. We disagree. Although KIM's motion to dismiss did not specifically address count II, KIM requested dismissal of the amended complaint, which included count II. Similarly, the trial court's written ruling does not specifically address the merits of VBS's request for declaratory judgment in count II. Since the court concluded it was not the proper tribunal to hear the parties' dispute about the award, logic dictates it would not need to address count II. A declaratory judgment carries the "force of a final judgment" regarding the parties' rights. (Internal quotation marks omitted.) *Universal Underwriters*, 372 Ill. App. 3d at 380.

¶ 45 Given our conclusion that Illinois courts are not the proper tribunal to adjudicate the parties' dispute about the award absent the parties' express agreement to arbitrate in Illinois, this count's merits have already been determined. See *Rodriguez*, 218 Ill. 2d at 357 (reviewing court can affirm trial court on any basis in record on appeal). Accordingly, no controversy exists about whether Illinois is the sole jurisdiction to adjudicate the parties' dispute about the arbitration award.

¶ 46                                                      CONCLUSION

¶ 47 For the foregoing reasons, we affirm the judgment of the circuit court dismissing VBS's amended complaint in its entirety.

¶ 48 Affirmed.